UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-CV-26-MOC-WCM

| | | |
|---|---|---|
| **DAVID BROWDER and LUCILLE BROWDER,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Exclude any Purported Expert Testimony from Allan A. Abbata (Mr. Abbata) and Jonathan W. Burrell (Mr. Burrell) under Federal Rule of Civil Procedure 26(a)(2), and Federal Rule of Evidence 702. (Doc. No. 37).

I.  **BACKGROUND**

This diversity action is a dispute over the cause of damage to Plaintiffs' vacation home on a steep hill in Lake Lure, North Carolina. (Doc. No. 3 at 2; Doc. No. 36-15 at 4). Plaintiffs discovered significant cracking in the walls, detached deck support posts, and cracks in the home's foundation after Tropical Storm Alberto moved through the area on May 30, 2018. (Doc. No. 1 at 4; Doc. No. 36-8; Doc. No. 36-9). Both parties agree a loss occurred. Plaintiffs had a homeowner's insurance policy with Defendant at the time of the loss. Plaintiffs think the cause of the damage was a wind event, and Defendant believes the damage was from erosion. (Doc. No. 3 at 2; Doc. No. 11 at 4). If the cause of the damage is erosion, then Plaintiffs cannot recover insurance payouts from Defendant because their homeowner insurance policy does not cover

1

earth movement. (Doc. No. 36-2 at 11).

### a. Mr. Abbata's Inspection and Report

In July 2018, Plaintiffs contacted Mr. Abbata to inspect the house. (Doc. No. 36-15 at 3). Mr. Abbata is a professional engineer who worked for The Warren Group, Inc. (Id. at 3). Mr. Abbata inspected the house on July 20, 2018. (Id.). He inspected the home by taking photographs, taking moisture readings of the foundation, measuring the cracks in the foundation and walls, and making visual observations of the home. (Id. at 4). Mr. Abbata opined the damage was from a one-time wind event that lifted the exterior decks of the home and pushed the house up the hill. (Id. at 8). Visual evidence and photographs informed his opinion. (Id. at 4). Visual evidence he relied on included cracks in the foundation and walls, crooked walls instead of straight, and support beams attached to the deck that separated from the ground. (Doc. No. 47-8 at 97). Mr. Abbata does not think there is evidence of erosion or flooding because he took moisture readings in the crawlspace under the home, which came back between 7 and 15 percent. He alleges these are "normal" levels for a crawlspace. (Doc. No. 36-15 at 9).

Mr. Abbata did not research the weather conditions of Tropical Storm Alberto (Doc. No. 47-8 at 15), did not conduct soil exploration to see if the foundation was compromised (Id. at 57), and did not calculate the strength of wind needed to cause the damage to the home. (Id. at 105-06). He said that he did not need the soil information because he "knew in [his] mind what caused the problem." (Id. at 59). Mr. Abbata's opinion that a strong wind damaged the home came from a news article that mentions a tropical storm, severe weather alerts sent to a smartphone, an engineering report prepared by Mr. Burrell's firm, and Mr. Abbata's interview with Plaintiffs. (Id. at 15). He did not use data about wind speeds or wind direction recorded during the storm in his Report. (Id. at 21). The article that he cites as research does not mention

wind. (Id. at 136). He did not have information about the specifics of the "one-time event" that he said caused the damage. (Id. at 131). Mr. Abbata also interviewed Plaintiffs about the "events leading up to the date of loss and other information" related to "assessing the cause and extent of damage" to the home. (Doc. No. 36-15 at 4-5). Yet, Plaintiffs were not at the house when the storm occurred. (Doc. No. 47-8 at 58). Mr. Abbata also stated that he believed the winds were forceful because he saw downed trees in the area. (Doc. No. 36-11 at 30-31).

### b. Mr. Burrell's Inspection and Report

Mr. Burrell inspected the house in July 2018. (Doc. No. 36-16 at 11). He provided a two-page report that addressed his visual site observations. (Id.). He did not conclude what caused the damage to the home but noted: "observations of the ground cover surrounding the residential structure indicated no signs of erosion or water flowing towards the residential structure." (Id.).

### c. Rule 26(a)(2) Disclosure Deadline

Plaintiffs had to disclose expert reports in compliance with Rule 26(a)(2) by September 28, 2020. (Doc. No. 20 at 1). Discovery completion was due February 2, 2021, and the parties scheduled the trial for around August 2, 2021. (Id.). Supplements for discovery per Rule 26(e) are due 30 days after receiving applicable information. (Id. at 3). Defendant alleges Plaintiffs did not produce expert reports that complied with Rule 26(a)(2) by the deadline. (Doc. No. 36-20 at 1).

## II. LEGAL STANDARDS

### a. Federal Rules of Civil Procedure 26 and 37

Rule 26 concerns necessary disclosures for expert testimony, while Rule 37 outlines the sanctions for failing to comply.

Rule 26(a)(2) requires parties to disclose the identity of witnesses they may use at trial to

provide expert testimony, along with a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; and any exhibits used to summarize or support them. FED. R. CIV. P. 26(a)(2). Parties must also disclose "a witness's qualifications with a list of all publications authored in the previous ten years; a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and a record of compensation for the study and testimony in the case." FED. R. CIV. P. 26(a)(2)(B). Rule 26(e) compels parties who have made disclosures under 26(a) to supplement and correct their disclosures promptly if they learn they are incomplete or incorrect. FED. R. CIV. P. 26(e). Rule 26(e) disclosures for this case are due 30 days after the party receives the supplemental information. (Doc. No. 20 at 3).

Rule 37(c) provides that a party without "substantial justification" who does not disclose information required under Rule 26 may not use any undisclosed witnesses or information. FED. R. CIV. P. 37(c). There are two exceptions to the rule excluding evidence: when the failure to disclose is "substantially justified," and when the nondisclosure is "harmless." Id. The party that failed to disclose the information bears the burden of establishing the nondisclosure was substantially justified or harmless. Bresler v. Wilmington Tr. Co., 855 F.3d 178, 190 (4th Cir. 2017). If the failure to disclose was not "substantially justified" or "harmless," then the court may impose sanctions. FED. R. CIV. P. 37(c).

In addition to or instead of entirely excluding the evidence, a court may instead impose alternative sanctions on the breaching party. Alternative sanctions include payment of reasonable expenses caused by the failure; informing the jury of the failure; preventing the disobedient party from supporting or opposing designated claims or defenses; striking pleadings in whole or in part; staying proceedings until the order is obeyed; dismissing the action in whole or in part;

rendering a default judgment against the disobedient party; or treating the failure as contempt of court. FED. R. CIV. P. 37(c).

The purpose of Rule 37 is to prevent surprise and prejudice to the opposing party. Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). The Court does not necessarily need to find bad faith or purposeful disregard of the discovery rules to find a Rule 37 violation. Id. For purposes of a Rule 37(c) exclusion analysis, the district court should consider the five following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." Id. The first four factors relate to the harmlessness exception, and the fifth factor relates to the substantial justification exception. Id. But the district court is not *required* to tick through each of the Southern State factors—it is *recommended* the court do so. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014).

### b. Federal Rule of Evidence 702

Rule 702 addresses testimony by expert witnesses. Witnesses qualified as an expert by "knowledge, skill, experience, training or education" can give opinion testimony if the expert's specialized knowledge will help the finder of fact understand the evidence or determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reasonably applied the principles and methods to the facts of the case. See FED. R. EVID. 702.

Requirements of Rule 702 apply to all expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 138 (1999). Plaintiffs need to prove opinions are relevant and reliable. Id. Rule

5

702 places a gatekeeping function on the district court, which decides whether the testimony's underlying "reasoning or methodology" is scientifically valid and "properly can be applied to the facts at issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1999). Some considerations are whether the theory or technique in question can be (and has been) tested, whether it has been peer-reviewed and published, whether there is a known or potential error rate, whether standards exist controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community. Id. at 593-95. These considerations are called Daubert factors.

The judge has broad discretion to ascertain the reliability and relevancy of expert testimony. But the judge should "be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (quoting Cavallo v. Star Enter., 100 F.3d 1150, 1158–59 (4th Cir. 1996). Evidence rules generally favor the admissibility of expert testimony: "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 Advisory Committee Notes; Heer v. Costco Wholesale Corp., 589 Fed. App'x 854, 861 (10th Cir. 2014). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Westberry at 596 (quoting Rock v. Arkansas, 483 U.S. 44, 61 (1987)).

### III. DISCUSSION

#### a. Failure to Properly Designate Expert Witnesses

Defendant asks this Court to exclude Mr. Abbata and Mr. Burrell's testimony from the trial because Plaintiffs failed to properly designate them as experts in the case. Defendant did not elaborate on what Plaintiffs did incorrectly and only said "Plaintiffs failed to do the required

6

steps to properly designate their experts." (Doc. No. 38 at 20).

To have complied with expert disclosure rules, Plaintiffs needed to identify potential expert witnesses and provide a complete statement of all opinions the witnesses would express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous ten years; a list of all other cases in the past four years where the witness testified as an expert at trial or by deposition; and a record of compensation for the study and testimony in the case. FED. R. CIV. P. 26(a)(2)(B).

### i. Identity of witnesses

Under Rule 26(a)(2) and the Case Management Plan, Plaintiffs had to designate experts and submit expert reports by September 28, 2020. (Doc. No. 20 at 1). On July 15, 2020, Plaintiffs disclosed the identities of Mr. Abbata and Mr. Burrell as expert witnesses in the case. (Doc. No. 23-1 at 2).

### ii. Statement of the opinions the experts will make, the reasons for them, and the facts considered by the witness in forming opinions

On September 28, 2020, Defendant's attorney certified that she had received a copy of the Expert Reports for Bunnell Lammons Engineering and the Warren Group, Inc. (Doc. No. 21). The Expert Report prepared by Mr. Burrell is dated August 2, 2018 (before the September 28 deadline for submission). (Doc. No. 36-16 at 11). The Expert Report prepared by Mr. Abbata is dated August 8, 2018 (before the September 28 deadline for submission). (Doc. No. 36-15 at 1).

Both Reports offer the statements that the witnesses would express, the bases for these opinions, and the facts or data used. (Doc. No. 36-15 at 1; Doc. No. 36-16 at 11). Mr. Abbata discusses his theories about the cause of the damage to Plaintiffs' house, and how he assessed the

damage using visual observation, moisture readings, depth measurements, and photographs. (Doc. No. 36-15 at 3-4). Mr. Burrell states that he visually observed the property in his assessment and believes the damage was not from erosion. He does not indicate what he thinks the cause of the damage is. (Doc. No. 36-16 at 11). Both Reports contain photographs of the home as evidence of the bases for their opinions. (Doc. No. 36-15 at 14-16; Doc. No. 36-16 at 13-18).

### iii. Exhibits used to summarize the evidence

In the Expert Reports, there were photographs attached that showed the damage to the home. (Doc. No. 36-15 at 14-16; Doc. No. 36-16 at 13-18). Plaintiffs could present these at trial to show the bases of the expert opinions. Defendant also has the screenshots of the severe weather alerts (Doc. No. 47-8 at 20) and the news article about Tropical Storm Alberto (Doc. No. 36-13) that Mr. Abbata used to formulate his opinions which Plaintiffs could use to summarize the evidence.

### iv. List of qualifications of the witness

Mr. Abbata's curriculum vitae (CV) showcases his qualifications as an expert through the projects he has worked on and his engineering degree. It is unclear what date Defendant received Mr. Abbata's CV because it is not dated. (Doc. No. 49-1). But the defense referenced Mr. Abbata's CV when they took his deposition, so the Court will assume they received the CV before February 24, 2021. (Doc. No. 47-8 at 3). The Court has not located a CV or list of qualifications for Mr. Burrell in the documents.

### v. Prior publications and prior testimony as an expert witness in a trial

Neither expert report includes "a list of all publications authored in the previous ten years" or "a list of all other cases in which, during the previous four years, the witness testified

as an expert at trial or by deposition." FED. R. CIV. P. 26. The Rules do not say if the expert witness disclosures must affirmatively state if the expert has never testified, participated in a deposition, or published a paper.

Mr. Abbata indicates in his deposition that he has been a trial expert in the past. (Doc. No. 47-8 at 35). This information is not in his CV. (Doc. No. 49-1). Defense counsel indicated they had a record of Mr. Abbata's prior sworn testimony in depositions and trials, but neither party has provided the Court with this information. (Doc. No. 47-8 at 3). The Court will assume that since Defendant referenced the list of prior testimony and depositions in their deposition of Mr. Abbata, that they had the list since at least February 24, 2021. (Id.).

vi. Compensation

Neither Report includes compensation for the study and testimony Mr. Abbata and Mr. Burrell received to inspect Plaintiffs' home and prepare their Reports. FED. R. CIV. P. 26; (Doc. Nos. 36-15; 36-16). However, Defendant references invoices that Mr. Abbata sent Plaintiffs for inspecting their property and preparing the Report when they deposed Mr. Abbata. (Doc. No. 47-8 at 36). The Court will assume Defendant has Mr. Abbata's record of compensation by Plaintiffs.

The Court finds that Plaintiffs' experts are missing the following: a record of Mr. Burrell's compensation; a list of qualifications for Mr. Burrell; a list of previous cases that Mr. Burrell may have given a deposition or testimony for; and publications that Mr. Burrell and Mr. Abbata may have authored in the last ten years. Next, the Court will determine whether to exclude expert testimony under Rule 37(c).

For purposes of a Rule 37(c) exclusion analysis, the Court considers the five following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability

of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). The Court is encouraged, but not required, to consider all these factors. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014).

The Court finds that the expert testimony that Mr. Burrell and Mr. Abbata are presenting at trial is not surprising or disruptive to Defendant. It is therefore harmless and not actionable under 37(c). Defendant has most of the information about Mr. Burrell and Mr. Abbata that Plaintiffs were required to disclose under Rule 26(a). Defendant has been able to supplement any information that may be missing through depositions of Mr. Abbata and interrogatories of Plaintiffs. The evidence Mr. Burrell and Mr. Abbata are presenting is crucial towards establishing Plaintiffs' version of events. Plaintiffs do not explain their failure to disclose this evidence. They state Defendant has had the opportunity to explore the expert opinions since Plaintiffs submitted them in September. (Doc. No. 47 at 7). They also emphasize the harm that will come to their case if the Court excludes the expert testimony. (Id.).

The Court agrees with Plaintiffs and does not exclude the expert testimony of Mr. Burrell and Mr. Abbata for Rule 26 violations. However, Plaintiffs must submit a list of qualifications for Mr. Burrell, a list of the previous cases Mr. Burrell may have given a deposition or testimony for, compensation for Mr. Burrell and Mr. Abbata's services, and publications that Mr. Burrell and Mr. Abbata may have authored in the previous ten years. If Mr. Burrell and Mr. Abbata do not have prior publications or undisclosed testimony, they should affirmatively state that for clarity. These documents should be submitted within 14 days of the entrance of this Order.

    b.  Rule 702

Defendant contends the Court should exclude Mr. Abbata's Report and testimony because it is unreliable, and his opinion is not based on reliable principles or methodologies. (Doc. No. 38 at 2). Defendant complains that Mr. Abbata did not collect weather data from the day of the damage, did not perform calculations to discern the strength of the wind needed to cause the damage, did not calculate the weight of the supporting deck posts or the deck itself, did not do soil exploration, and failed to consider soil erosion. (Id. at 3). Rule 702 gives the district court the responsibility to decide whether the testimony's underlying method is valid and properly applied to the facts of the case. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1999).

Expert witnesses must qualify as experts by their knowledge, skill, experience, or training. FED. R. EVID. 702. Mr. Abbata's prior experience and education qualify him as a structural and civil engineering expert. He received a B.S. in Civil Engineering in 1971 from Trine University. (Doc. No. 49-1 at 3). He had been working as an engineer since 1972 up until January 2019, and he has five patents and five pending patents related to decks. (Id. at 15-16).

The expert's technical knowledge must also be relevant to understanding the evidence or determining a fact at issue. FED. R. EVID. 702. Since Mr. Abbata's expertise is in structural and civil engineering, his technical knowledge is relevant to understanding the cause of structural damage to Plaintiffs' house. Mr. Abbata has experience providing structural analysis for buildings. (Doc. No. 49-1 at 3-5). Notably, he performed specialized consulting services related to property loss from Hurricane Sandy in 2012 and 2013, where he "performed over 50 visual inspections and technical investigations…on residential structures." (Id. at 4). For the Warren Group, Inc., he inspected concrete systems for structural defects and assessed damages resulting from weather events like hurricanes, high winds, and flooding. (Id. at 3). All the information

11

about Mr. Abbata's experience is in his CV.

Experts must base their testimony on sufficient facts or data. FED. R. EVID. 702. Mr. Abbata inspected the home and used what he learned from his inspection to form his Report. His opinion is grounded in facts.

Expert testimony is the product of reliable principles and methods, and the expert applies these principles and methods to the facts of the case. FED. R. EVID. 702. To determine whether the testimony is reliable and relevant, the district court may consider whether the technique has been tested, subjected to peer review and publication, attracted acceptance within the relevant scientific community, how high the error rate is, and whether standards govern its operation. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1999). The Court has not received from Defendant or Plaintiffs an industry standard for professional engineers who evaluate structural damage to homes. As such, the Court will evaluate Mr. Abbata's methodologies in comparison to those methods used by the other engineers who inspected Plaintiffs' home.

Four engineers inspected Plaintiffs' home: Dana Shave, Allan Abbata, Jonathan Burrell, and Douglas Dunko. During his inspection, Mr. Shave made visual observations of the house, the trees, and the surrounding grounds. He took photographs of the house as well. (Doc. No. 36-3 at 2). Mr. Shave gathered and reviewed weather data showing the rain and wind information for Tropical Storm Alberto. (Id.). Mr. Dunko made visual observations, took measurements, and took photographs of the home and the trees and ground surrounding the house when he did an inspection. (Doc. No. 36-8 at 2). He also reviewed the reports of Mr. Burrell and Mr. Abbata and the North Carolina Geological Survey from May 2019. He did not perform soil testing to form his opinion because the physical evidence "was clearly provided." (Id. at 4). Mr. Burrell made visual observations of the house and the ground surrounding the house. (Doc. No. 36-16 at 11).

12

He took measurements of some of the cracks in the foundation and walls. (Id.).

When considering the methodologies of the other three engineers, with whom Defendant does not raise an issue, Mr. Abbata's techniques appear similar. He took photographs of the home, took moisture readings of the foundation, measured the cracks in the foundation and walls, and made visual observations of the house. (Doc. No. 36-15 at 3-4). None of the engineers performed soil testing. Mr. Abbata was the only one to take moisture readings of the crawlspace. However, Mr. Shave and Mr. Dunko reviewed weather reports of Tropical Storm Alberto. (Doc. No. 36-3 at 2; Doc. No. 36-8 at 3). Mr. Abbata did not read a weather report and instead read an article about the storm and interviewed Mr. Browder about the events leading up to the loss and other relevant information, including the storm. (Doc. No. 36-15 at 3-4). Because Mr. Abbata's methods are very similar to those of the other engineers, his methods likely have acceptance within a relevant scientific community. No evidence or argument asserts that performing soil tests or mathematical calculations are an industry practice. Therefore, the expert evidence does not violate industry standards.

Furthermore, it is important to note that imperfect expert testimony may still be admitted into trial. Courts in other jurisdictions stress that the opposing party can expose weaknesses in expert testimony during cross-examination. One case involved resolving a dispute between an insurance company and a claimant who disagreed over whether wind damage or earth movement caused the damage to Plaintiffs' home:

> "Although [Plaintiffs' expert] may not rely on as holistic a picture as [Defendant] would prefer, their facts and data are not rooted in "farce or fiction." Inspections of the property and an interview of its owner are reasonable factual bases for reports of this nature. Any purported weaknesses in due diligence or research can be highlighted for the jury in cross-examination."

Melendez v. S. Fid. Ins. Co., No. CV 20-689, 2020 WL 6868850, at *3 (E.D. La. 2020) (quoting

13

Guillory v. Domtar Indus. Inc., 95 F.3d 1320, 1331 (5th Cir. 1996)). Melendez is like this case, because the insurance company and the claimant disagreed on the cause of damage to the home and the parties' expert opinions reflected this disagreement. The court in Melendez states that the "failure to rebut every other possible theory of causation does not automatically invalidate an expert's report." Id. (quoting Gaffney v. State Farm Fire & Cas. Co., 2009 WL 3188421, at \*\*3-4 (E.D. La. July 15, 2009)). The court in Melendez also reasoned that the defendant had the right to cross-examine any expert witnesses for Plaintiffs at trial to expose any perceived flaws. Defendant in this case will have the same opportunity. Furthermore, in Gaffney, the court admitted an expert's testimony even though he "failed to consider alternative causes, such as pre-existing soil conditions, as the reason why a house was knocked off its foundation during a hurricane." Gaffney, 2009 WL 3188421 at \*\*3-4.

The expert does not have to exhaustively consider every possibility for his opinion to be rendered admissible for trial. An expert's opinion is not "rendered inadmissible" when he disagrees with another's "opinions and testing methods." Refrigeration Supplies, Inc. v. Acadia Ins. Co., 2020 WL 7397002 (E.D. Mo. 2020). Since Mr. Abbata's methodologies are consistent with that of the other engineers who inspected Plaintiffs' home, the finder of fact should decide which of the expert opinions to give more weight. Defendant may bring attention to perceived flaws in Mr. Abbata's Report and testimony during cross-examination at trial.

Finally, Mr. Abbata also reasonably applied the principles and methods he used to the facts of the case. Using the facts that he gathered, including the normal level of moisture in the crawlspace, the lack of signs of soil erosion, the jagged cracking pattern on the interior walls and ceiling, the crooked walls inside and outside the home, the separation of the wooden posts from the foundation, the lack of standing water in the basement, the news article about Tropical Storm

14

Alberto, and the interview with Mr. Browder, he came to the reasonable conclusion that the damage to Plaintiffs' home was caused by wind rather than by erosion. (Doc. No. 36-15). As stated above, expert testimony need not be perfect. It only needs to be reasonable. The finders of fact will be able to decide for themselves whether they find Plaintiffs' experts or Defendant's experts more reliable.

## IV. CONCLUSION

The Court has carefully reviewed Defendant's Motion to Exclude Expert Testimony, Plaintiffs' Complaint, all Documentary Evidence submitted by Defendant and Plaintiffs, Plaintiffs' Response to Defendant's Motion to Exclude, the Expert Reports in question, and the Case Management Plan. Based on this review, the Court concludes that it is appropriate to allow Plaintiffs' Expert Witnesses to testify at trial.

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude Testimony by Expert Witnesses Mr. Abbata and Mr. Burrell (Doc. No. 37) is **DENIED**. Plaintiffs must submit a list of qualifications for Mr. Burrell, a list of the previous cases Mr. Burrell may have given a deposition or testimony for, compensation for Mr. Burrell and Mr. Abbata's services, and publications that Mr. Burrell and Mr. Abbata may have authored in the previous ten years. If Mr. Burrell and Mr. Abbata do not have prior publications or undisclosed testimony, Plaintiffs should affirmatively state that for clarity. These documents should be submitted **WITHIN 14 DAYS** of the entrance of this Order.

Signed: June 18, 2021

Max O. Cogburn Jr
United States District Judge