# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:20-CV-26-MOC-WCM

| | | |
|---|---|---|
| DAVID BROWDER and LUCILLE BROWDER, | ) ) | |
| Plaintiffs, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | |
| Defendant. | | |

---

## FINDINGS AND CONCLUSIONS

**THIS MATTER** is before the Court on Defendant's Motion to Strike portions of the

affidavits submitted by Plaintiff David Browder ("Mr. Browder") and Plaintiff's Expert, Allan

Abbata ("Mr. Abbata"). (Doc. Nos. 53; 48; 49). The Court enters the following findings and

conclusions, and orders that certain passages of the affidavits not be considered in summary

judgment proceedings.

## I.     BACKGROUND

This case is a diversity dispute over the cause of damage to Plaintiffs' vacation home in

Lake Lure, North Carolina. (Doc. No. 3 at 2). Plaintiffs found extensive damage to the house

after Tropical Storm Alberto hit the area in May 2018. (Doc. No. 1 at 4). Their findings included

significant cracks in the walls, detached deck support posts, and cracks in the home's foundation.

(Doc. Nos. 36-8; 36-9). Both parties agree that a loss occurred and that Plaintiffs had a

homeowner's insurance policy with Defendant at the time of the loss. However, there is a dispute

over what caused the loss. Plaintiffs believe it was due to a wind event, while Defendant believes

it was from erosion. (Doc. Nos. 3 at 2; 11 at 4). Plaintiffs will not recover from Defendant if the

cause of damage is found to be erosion because their homeowner's insurance policy does not cover earth movement damage. (Doc. No. 36-2 at 11).

Defendant previously put forth a Motion for Judgment on the Pleadings, a Motion for Summary Judgment, and a Motion to Exclude Expert Testimony, all of which this Court denied. (Doc. Nos. 24; 39; 37). In response to the Motions, Plaintiffs submitted additional evidence, including an affidavit from Mr. Browder and an affidavit from Mr. Abbata. (Doc. Nos. 48; 49). Defendant contends that portions of the affidavits of Mr. Browder and Mr. Abbata should be stricken from the record, under Federal Rule of Civil Procedure 37 ("Rule 37") and Federal Rule of Evidence 702 ("Rule 702"). (Doc. No. 54 at 1). This Court evaluates Defendant's claims and analyzes Mr. Browder and Mr. Abbata's affidavits separately.

### a. Mr. Browder's Affidavit

Mr. Browder wrote an affidavit to oppose Defendant's Motion to Exclude Expert Testimony and Motion for Summary Judgment. Defendant contends the affidavit contains inadmissible hearsay, statements contradicting his deposition, and expert opinions or conclusions that Mr. Browder is not qualified to form. (Doc. No. 54 at 1). Defendant raises issues with seven statements that Mr. Browder made.

In paragraph 3 of the affidavit, Mr. Browder wrote: "In speaking with [his] neighbors, [he] discovered there were multiple severe weather events that passed through during [his] brief absence of approximately a week." (Doc. No. 48). Defendant has concerns because Mr. Browder does not identify who provided him the information about the storm. (Doc. Nos. 54 at 2; 48).

In paragraph 4, Mr. Browder wrote that he "noticed newly fallen trees in the area of [his] home that appears to [him] to have been knocked down by wind." (Doc. No. 48). Defendant contends that this is a significant departure from Mr. Browder's deposition testimony, where he

stated there were "downed trees around." (Doc. No. 54 at 2). Mr. Browder also wrote that the

trees appeared "to have been knocked down by the wind." (Doc. No. 48). Defendant challenges

this statement because they believe Mr. Browder had no facts or documentary evidence to

support a condition about the trees that would allow him to conclude that wind toppled them.

(Doc. No. 54 at 2). Defendant also asserts Mr. Browder did not have the knowledge or

experience to identify when trees fall due to wind as opposed to other causes. (Id.).

In paragraph 5, Mr. Browder wrote that he "discovered National Oceanic and

Atmospheric Administration reports that showed that there were two separate wind events that

came through the area of [his] home, the remnants of Tropical Storm Alberto…and a line of

severe thunderstorms." (Doc. No. 48). Defendant contends that Plaintiffs did not provide facts to

demonstrate Mr. Browder had the expertise to determine whether data in reports constitutes wind

events. (Doc. No. 54 at 3).

In paragraph 6, Mr. Browder wrote that when he was inspecting his property, he "noticed

nothing to suggest to [him] that the ground of [his] real property moved in any way. The

vegetation was not disturbed, there were no sinkholes, and the cement pads…that [his] back deck

is supported upon were just as level and exposed above ground as they were the last time" he

saw them before the loss. (Doc. No. 48). Defendant contends that Mr. Browder did not have the

knowledge or experience to identify evidence of ground movement. (Doc. No. 54 at 3).

Furthermore, they assert that Plaintiffs did not present evidence to show Mr. Browder

"conducted any examination of the concrete pads, took any measurements, made photographs, or

engaged in any other actions" that would allow him to decide whether the pads had altered in

appearance. (Id.).

In paragraphs 7, 8, and 9 of Mr. Browder's affidavit, Defendant argues that Plaintiffs have not shown that Mr. Browder had the expertise to form this opinion and that there is no evidence showing how his opinion is supported by facts, science, or Mr. Browder's experience. (Doc. No. 54 at 4). In paragraph 7, Mr. Browder wrote that the cement pads are "directly next to the wall that State Farm claims was damaged as a result of the earth sinking." He believes that "should the earth have moved enough to cause this damage, these cement pads and the vegetation in the area would not look exactly the same as they had prior to the loss." (Doc. No. 48). In paragraph 8, Mr. Browder wrote that the ceiling on the roof of his back deck appeared to him like "it was blown up and away from the support column by wind rather than the earth sinking under the house." (Doc. No. 48). Lastly, in paragraph 9, Mr. Browder wrote that he believes his house "was not damaged as a result of ground movement" as Defendant claims. (Doc. No. 48).

### b. Mr. Abbata's Affidavit

Mr. Abbata also provided an affidavit to oppose Defendant's Motion to Exclude and Motion for Summary Judgment. (Doc. No. 49). Defendant contends that four paragraphs in Mr. Abbata's affidavit should be stricken from the record for two reasons: because they (1) contain opinions that differ from his original damage assessment of the property and deposition, and (2) they are speculative and fail to meet the test of reliability under Rule 702. (Doc. No. 54 at 4-6).

In paragraph 10, Mr. Abbata wrote that when he investigated Plaintiffs' home, he used his normal process that "includes but is not limited to: interviewing the client, walking the premises, taking measurements with [his] tools, and reviewing available information, such as local reports, and documentation of existing conditions by other professionals, about events for which [he] was not present; all are sources [he] can reasonably rely upon as an expert in civil and

structural engineering when conducting an investigation, drawing conclusions, preparing a report, and testifying." (Doc. No. 49). Defendant asserts this contradicts Mr. Abbata's deposition, where he "admitted" he did not review the available information, local reports, or documentation of existing conditions prepared by other professionals about the weather conditions in Lake Lure when the damage occurred to Plaintiffs' home. (Doc. No. 54 at 5) (citing Doc. Nos. 36-11 at 4-5, 20, 59, 33, 61; 36-13).

In paragraph 15, Mr. Abbata wrote that in his time investigating losses to structures he has "readily relied upon data collected by the National Oceanic and Atmospheric Administration" ("NOAA"). (Doc. No. 49). Defendant asserts Mr. Abbata did not rely on information collected by NOAA when he formed his opinions, according to his deposition. (Doc. No. 54 at 5) (citing (Doc. Nos. 36-11 at 4-5, 20, 59, 33, 61; 36-13).

In paragraph 16, Mr. Abbata wrote that "a review of the NOAA documents shows there were two wind events during the time span that the loss to Plaintiffs' house occurred." (Doc. No. 49). Defendant contends that Mr. Abbata did not explain what a wind event was and how he knew the reports showed wind events. (Doc. No. 54 at 6).

In paragraph 17, Mr. Abbata concluded that it was his opinion that "the damages to the house were directly caused by one or both of the wind events described in paragraph 16." (Doc. No. 49). Defendant asserts that this differs from Mr. Abbata's opinion in his deposition because he did not review the NOAA information when he formed his opinion, prepared his report, and testified. (Doc. No. 54 at 6). Additionally, Defendant is concerned that Mr. Abbata did not explain how he connected the information in the NOAA report to his opinion that the wind events caused the damage. (Id.).

II.    LEGAL STANDARDS

### a. Federal Rule of Civil Procedure 37

Rule 37 provides that a party who without "substantial justification" does not disclose information required under Rule 26 may not be allowed to use any undisclosed witnesses or information. FED. R. CIV. P. 37. There are two exceptions to the rule excluding evidence: when the failure to disclose is "substantially justified," and when the nondisclosure is "harmless." Id. The party that failed to disclose the information bears the burden of establishing that the nondisclosure was substantially justified or harmless. Bresler v. Wilmington Tr. Co., 855 F.3d 178, 190 (4th Cir. 2017). If the failure to disclose was not "substantially justified" or "harmless," then the court may impose sanctions. FED. R. CIV. P. 37(c).

In addition to or instead of entirely excluding the evidence, a court may instead impose alternative sanctions on the breaching party. Alternative sanctions include payment of reasonable expenses caused by the failure; informing the jury of the failure; preventing the disobedient party from supporting or opposing designated claims or defenses; striking pleadings in whole or in part; staying proceedings until the order is obeyed; dismissing the action in whole or in part; rendering a default judgment against the disobedient party; or treating the failure as contempt of court. FED. R. CIV. P. 37(c).

The purpose of Rule 37 is to prevent surprise and prejudice to the opposing party. Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). The Court does not necessarily need to find bad faith or purposeful disregard of the discovery rules to find a Rule 37 violation. Id. For purposes of Rule 37(c) exclusion analysis, the district court should consider the five following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence;

and (5) the non-disclosing party's explanation for its failure to disclose the evidence." Id. The

first four factors relate to the harmlessness exception, and the fifth factor relates to the substantial

justification exception. Id. But the district court is not *required* to tick through each of the

Southern States factors—it is *recommended* the court do so. Wilkins v. Montgomery, 751 F.3d

214, 222 (4th Cir. 2014).

### b. Federal Rule of Evidence 702

Rule 702 governs testimony by expert witnesses. Witnesses qualified as an expert by

"knowledge, skill, experience, training or education" can give opinion testimony if the expert's

specialized knowledge will help the finder of fact understand the evidence or determine a fact in

issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable

principles and methods; and the expert has reasonably applied the principles and methods to the

facts of the case. See FED. R. EVID. 702.

Requirements of Rule 702 apply to all expert testimony. Kumho Tire Co. v. Carmichael,

526 U.S. 137, 138 (1999). Plaintiffs need to prove opinions are relevant and reliable. Id. Rule

702 places a gatekeeping function on the district court, which decides whether the testimony's

underlying "reasoning or methodology" is scientifically valid and "properly can be applied to the

facts at issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1999). Some

considerations are whether the theory or technique in question can (and has been) tested, whether

it has been peer-reviewed and published, whether there is a known or potential error rate,

whether standards exist controlling its operation, and whether it has attracted widespread

acceptance in a relevant scientific community. Id. at 593-95. These considerations are called

Daubert factors.

The judge has broad discretion to ascertain the reliability and relevancy of expert testimony. But the judge should "be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (quoting Cavallo v. Star Enter., 100 F.3d 1150, 1158–59 (4th Cir. 1996)). Evidence rules generally favor the admissibility of expert testimony: "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 Advisory Committee Notes; Heer v. Costco Wholesale Corp., 589 Fed. App'x 854, 861 (10th Cir. 2014). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Westberry at 596 (quoting Rock v. Arkansas, 483 U.S. 44, 61 (1987)).

### c. Motion to Strike Portions of Affidavit

The Court may not strike portions of an affidavit. After the 2010 revision to Federal Rule of Civil Procedure 56, the sole remaining ability for a court to strike falls under Federal Rule of Civil Procedure 12(f). FED. R. CIV. P. 12(f). Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Id. Rule 7 defines pleadings as (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer. FED. R. CIV. P. 7(a). Therefore, affidavits and exhibits are not pleadings that may be stricken under Rule 12(f).

However, the Court *may* disregard affidavits and portions thereof under the "sham-affidavit" rule when it considers the evidence for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides for a party to object to facts not supported by admissible

evidence. FED. R. CIV. P. 56(c)(2). "The objection functions much as an objection at trial,

adjusted for the pretrial setting. The burden is on the proponent to show that the material is

admissible as presented or to explain the admissible form that is anticipated. There is no need to

make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the

summary-judgment stage does not forfeit the right to challenge admissibility at trial." FED. R.

CIV. P. 56(c)(2) Advisory Committee Notes. Since a motion to strike has not been a proper

method for attacking the admissibility of evidence under Rule 56 since at least 2010, this Court

will interpret Defendant's Motion to Strike as a series of objections under Rule 56(c). Farnhurst,

LLC v. City of Macedonia, 2016 WL 524361 (N.D. Ohio 2016); Adams v. United Ass'n of

Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada,

AFL-CIO, 2020 WL 9311949 (M.D. La. 2020) (quoting Cutting Underwater Techs. USA, Inc. v.

Eni U.S. Operating Co., 671 F.3d 512, 515 (5th Cir. 2012)) ("Under the now-applicable Rule

56(c)(2), however, it is no longer necessary for a party to file such a motion; instead, the party

may simply object to the material. . . .In light of this change, [Defendant's] Motion to Strike will

be treated as an objection.").

    "A genuine issue of material fact is not created where the only issue of fact is to

determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick

v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). At the summary judgment stage, "if an

affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the

affidavit pursuant to the sham-affidavit rule." Kinser v. United Methodist Agency for the

Retarded—Western N.C., Inc., 613 F. App'x 209, 210-11 (4th Cir. 2015). "Affidavits submitted

on summary judgment do not deserve to receive unthinking acceptance by the court." In re

Edmond, 934 F.2d 1304, 1308 (4th Cir. 1991). In Rohrbough v. Wyeth Laboratories, Inc., the

Fourth Circuit held that "the district court was justified in disregarding the affidavit" submitted by a party opposing summary judgment. 916 F.2d 970, 975 (4th Cir. 1990). The court emphasized that the affidavit contradicted prior deposition testimony, so it was appropriate to ignore it. In re Edmond, 934 F.2d at 1308 (citing Rohrbough, 916 F.2d at 976); see also Blackwell v. Houser, No. 5:16-CV-67-FDW, 2017 WL 4684188, at *9 (W.D.N.C. Oct. 18, 2017) (disregarding plaintiff's inconsistent affidavit on summary judgment).

## III.    DISCUSSION

### a.  Mr. Browder's Affidavit

First, Defendant objects to paragraph 3 of Mr. Browder's affidavit because it allegedly contains inadmissible hearsay. (Doc. No. 54 at 7). Hearsay is an out-of-court statement that a party offers to prove the truth of the matter asserted in the statement. FED. R. EVID. 801. In paragraph 3 of the affidavit, Mr. Browder said he discovered via his neighbors that "there were multiple severe weather events that passed through during [his] brief absence of approximately a week." (Doc. No. 48). Defendant is concerned because Mr. Browder does not know whom he spoke to about the weather events. They contend that he used paragraph 3 to prove "the truth of the matter of the statements of third parties," and that if the Court allowed for these statements to be let in, Defendant will not be able to conduct discovery of the unidentified neighbors. (Doc. No. 54 at 7).

The Court disagrees. Although Mr. Browder cannot identify whom he spoke with about Tropical Storm Alberto, the existence of the storm is independently well-documented and does not hinge on the affidavit of Mr. Browder. Tropical Storm Alberto passed through the area when Mr. Browder was not at the house in Lake Lure: this is verified by documentation from both Plaintiffs and Defendant. (Doc. Nos. 3 at 4; 11 at 3; 40 at 1, 14). Mr. Browder's statement in

paragraph 3 of the affidavit speaks more to the fact that he was not at home at the time that the storm occurred. Therefore, the Court overrules the objection to paragraph 3 of Mr. Browder's affidavit because the existence of the tropical storm is not a legitimate dispute in this case.

Second, Defendant objects to paragraphs 4-9 of Mr. Browder's affidavit because Mr. Browder "lacks any knowledge, skill, experience, training or education that would qualify him to offer the opinions and conclusions provided." (Doc. No. 54 at 8).

Paragraph 4 of Mr. Browder's affidavit concerns "newly" fallen trees around his home, whereas his deposition said there were "downed trees." (Doc. No. 54 at 2). The Court finds his affidavit does not contradict his testimony and overrules Defendant's objection. Defendant is concerned about Mr. Browder's opinion that the trees looked like they had been downed by wind because he does not have the knowledge to qualify him to offer the opinion. However, the Court reasons that a layperson would have the capacity to distinguish between some kinds of damage to trees. An average person could tell if their tree had fallen, as opposed to being cut down or slowly killed by disease. The Court will take into consideration the fact that Mr. Browder would likely have trouble discerning whether the trees fell due to wind or soil saturation when evaluating the facts for summary judgment.

In paragraph 5 of his affidavit, Mr. Browder references NOAA reports that he attaches as Exhibits A and B after his affidavit. (Doc. No. 48). Defendant objects to paragraph 5 because they think that Mr. Browder does not have the expertise to determine what "wind events" are. (Doc. No. 54 at 3). Exhibit A is from the Storm Events Database of the National Centers for Environmental Information. The episode narrative of the storm from May 31 states that "a few of the storms produced brief severe weather in the form of damaging winds, mainly across the foothills. Later in the evening, a decaying line of thunderstorms entered western North Carolina

from Tennessee . . . despite the weakening of the storms, a remnant area of strong winds left behind by the storms produced damage in portions of the mountains." (Doc. No. 48 at 4). Exhibit B, a report of Tropical Storm Alberto from the National Hurricane Center, references "tropical-storm-force winds." (Id. at 9). The Court disagrees with Defendant's characterization of Mr. Browder's statements. Explanations of the windstorm, along with its speeds, are attached in the reports. Mr. Browder did not independently analyze weather data to come to his conclusion. Instead, he read reports assembled by individuals with expertise, who provided context to the data that they provided in the report. The Court overrules Defendant's objection to paragraph 5 of Mr. Browder's affidavit.

Paragraph 6 of Mr. Browder's affidavit describes his home when he inspected it after the storm; according to him, the vegetation was not disturbed, there were no sinkholes, and the cement pads of his back deck appeared to be in the same spot as they were before he left. Defendant would contend that Mr. Browder does not have the expertise to make these visual observations. The Court disagrees. If Plaintiffs may not testify about the visual condition of their own home in court, it would be an unjust interpretation of the Federal Rules of Evidence and Federal Rules of Procedure. Plaintiffs cannot be expected to take photos of their homes proactively before damage occurs that they may not have ever envisioned. Accordingly, the Court overrules Defendant's objection to paragraph 6 of Mr. Browder's affidavit.

The Court sustains Defendant's objections to paragraphs 7, 8, and 9 of Mr. Browder's affidavit and will not consider them when analyzing evidence for summary judgment because they make conclusions unsupported by facts. Paragraph 7 states that if the earth had moved, the cement pads and vegetation would not look the same as before the loss. (Doc. No. 48). Paragraph 8 states that the ceiling on the roof of Mr. Browder's deck appeared to be blown up

and away, rather than by the earth sinking. Lastly, paragraph 9 states that Mr. Browder's belief that his home was not damaged due to ground movement. As stated by Defendant, Mr. Browder is not an expert witness and thus does not have the requisite skill or experience necessary to offer opinions based on scientific, technical, or specialized knowledge. FED. R. EVID. 701(C), 702. It is the Court's opinion that testimony regarding what damage would look like were it caused by strong winds or erosion is something that requires specialized knowledge to discern. Therefore, the Court will not consider these statements in assessing Defendant's Motion for Summary Judgment.

### b. Mr. Abbata's Affidavit

First, Defendant objects to paragraphs 10, 15, 16, and 17 of Mr. Abbata's affidavit because Defendant believes they were not timely disclosed and they contradict Mr. Abbata's prior report and sworn deposition testimony. (Doc. No. 54 at 10). As discussed, the Court may not strike portions of an affidavit. The Court may choose to disregard portions of the affidavit when it "flatly contradicts" a party's earlier deposition, under the sham-affidavit rule. Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). For the sham affidavit rule to apply, "there must be a bona fide inconsistency" between "an affiant's averments and his deposition testimony." Kinser, 613 F. App'x at 210-11 (4th Cir. 2015) (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 n.7 (4th Cir. 2001).

In Mr. Abbata's deposition, he named a variety of weather documents that he relied on to make his report: these include a local news article called "Rallying to Meet the Challenge," three severe weather alerts screenshotted on someone's phone and sent to Mr. Abbata, and Mr. Burrell's engineering report. (Doc. No. 47-8 at 14-20). He stated that he did not cross-reference NOAA reports with the screenshots to see if they corresponded with each other, and that these

were all the documents that he examined when analyzing the weather's impact on the Plaintiffs'

house. (Id. at 19, 20). However, in his affidavit, Mr. Abbata said that he reviewed the NOAA

reports in inspecting the house, after having never mentioned using them before. He mentions the

NOAA reports in paragraphs 15, 16, and 17. Since Mr. Abbata's deposition and his affidavit

meaningfully depart from each other on this subject, the Court will sustain Defendant's

objections to paragraphs 15, 16, and 17 of Mr. Abbata's affidavit.

The Court will overrule Defendant's objection to paragraph 10. In this paragraph, Mr.

Abbata mentioned using local reports and documents prepared by other experts for events he was

not present at. The text does not specify that he used local reports and documents for *evaluating*

*weather events* for which he was not present. Mr. Abbata used Mr. Burrell's report, which was a

report prepared by another professional about an event he was not present for—Mr. Burrell's

inspection of the property. Mr. Abbata also used local news reports to learn more about the

weather from Tropical Storm Alberto. (Doc. No. 47-8 at 14-20). This is consistent in both his

affidavit and deposition. Defendant may be interpreting the paragraph to refer to weather event

analysis prepared by other professionals, but this is not the plain language of the text, so the

Court will overrule it.

Second, Defendant objects to paragraphs 10, 15, 16, and 17 of Mr. Abbata's affidavit

because they are allegedly speculative and fail to meet the test of reliability under Rule 702. The

Court will not evaluate paragraphs 15, 16, and 17 of Mr. Abbata's affidavit under this standard

because objections to them have already been sustained.

Defendant's objection to paragraph 10 as based on speculative or unreliable testimony

will be overruled by the Court, for reasons largely outlined in the Court's Order regarding the

expert testimony of Mr. Abbata. (Doc. No. 60). Although Defendant may not be wholly satisfied

with the methodologies Mr. Abbata used when forming his opinion, the Court finds that the opinion is reasonable.

## IV.    CONCLUSION

After evaluating the relevant evidence and documentation, the Court enters the following findings and conclusions, and will sustain objections to paragraphs 7, 8, and 9 of Mr. Browder's affidavit, and will sustain objections to paragraphs 15, 16, and 17 of Mr. Abbata's affidavit. The rest of Defendant's objections will be overruled, and the Court will consider Defendant's concerns when assessing that evidence in summary judgment proceedings.

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike portions of the affidavits of Mr. Browder and Mr. Abbata be **DENIED** in part and **GRANTED** in part. The Court will disregard in its assessment for summary judgment paragraphs 7, 8, and 9 of Mr. Browder's affidavit, and will disregard paragraphs 15, 16, and 17 of Mr. Abbata's affidavit.

Signed: July 14, 2021

Max O. Cogburn Jr
United States District Judge