UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
NO. 1:20-CV-26-MOC-WCM

| | |
|---|---|
| **DAVID BROWDER and LUCILLE BROWDER,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Defendant State Farm's Motion for Summary Judgment, filed April 2, 2021. (Doc. No. 39). This matter is ripe for review after considering Defendant's Motion to Exclude Expert Testimony and Motion to Strike. The Court enters the following findings and conclusions and grants Defendant's Motion in part and denies it in part.

### I. PROCEDURAL HISTORY

In January 2020, Plaintiffs filed a Complaint against Defendant, seeking proceeds due under the Insurance Policy issued by Defendant, compensatory and punitive damages, and attorneys fees. (Doc. No. 1). They argued that Defendant breached the homeowner's insurance contract, refused to settle the claim in bad faith, and engaged in unfair claim settlement practices and unfair or deceptive commercial practices. (Id.). Defendant denied these claims and made a Motion for Judgment on the Pleadings in November 2020, which this Court denied. (Doc. No. 24; Doc. No. 28). Afterward, Defendant moved for Reconsideration of this Court's Order on Motion for Judgment on the Pleadings. (Doc. No. 31). This Court denied the Motion for

Reconsideration of the Order in April 2021. (Doc. No. 46). In the meantime, Defendant wrote a Motion to Exclude Plaintiffs' Experts and a Motion for Summary Judgment. (Doc. No. 37; Doc. No. 39). The Court denied the Motion to Exclude Plaintiffs' Experts but ordered Plaintiffs to provide additional documentation to Defendant regarding their expert witnesses. (Doc. No. 60). Defendant moved to Strike Expert Affidavits in May 2021. (Doc. No. 53). This Court denied Defendant's Motion in part, and granted it in part. Now, this Court addresses Defendant's Motion for Summary Judgment. (Doc. No. 39).

## II. FACTS

This diversity action is a dispute over the cause of damage to Plaintiffs' vacation house in Lake Lure, North Carolina. (Doc. No. 3; Doc. No. 36-15). Both parties agree that a loss occurred. Plaintiffs had a homeowner's insurance policy with Defendant at the time of the loss. Plaintiffs think the cause of the damage was a wind event, and Defendant believes the damage was from erosion. (Doc. No. 3; Doc. No. 11).

### a. The Vacation Home

Plaintiffs Lucille and David Browder ("Plaintiffs") own a vacation house at 159 Youngs Mountain Drive, Lake Lure, North Carolina. (Doc. No. 3; Doc. No. 36-15). The house is on a steep hill, and the hill slope runs from east to west. (Doc. No. 36-1). On or around May 30, 2018, subtropical storm Alberto moved through the southeastern United States, bringing heavy rain to Lake Lure. (Doc. No. 36-3 at 14). Between eight and twelve inches of rain fell within a short amount of time. (Id.). Winds came from the north at 25 miles per hour, but individual wind gusts could have had higher wind speeds. (Id. at 17; Doc. No. 36-6 at 26-27).

In early June 2018, Mr. Browder discovered significant cracking in the walls and around the door and window openings inside the home. (Doc. No. 36-10 at 23). He also found severe

2

cracking along the entire length of the lower part of the western wall of the home. (Doc. No. 36-1). The northern and southern walls had large cracks from the western wall crack to the ground. (Id.). When Mr. Browder went into the crawlspace of his home, he could see sunlight through the cracks in the walls. (Doc. No. 36-10 at 38). There was a large fissure in the ground across the length of the house, and some of the support posts for the decks were detached from either the deck or the concrete pad on the ground. (Doc. No. 36-1). He found that the ground near the fissure was "dry as a bone." (Doc. No. 36-10 at 38). Mr. Browder did not find additional damage. (Id. at 37).

When Mr. Browder found the damage to his home, he began investigating the potential cause of the damage. His neighbors told him that severe weather events passed through Lake Lure when he was not there. (Doc. No. 48 at 1). Mr. Browder found National Oceanic and Atmospheric Administration ("NOAA") reports that confirmed what his neighbors said. (Id.). There were two storms near his home: Tropical Storm Alberto and a wave of thunderstorms. (Id.).

To Mr. Browder, the ground around his house did not look different from when he had last been there. (Id.). There were no sinkholes or disturbed vegetation, and the cement pads did not appear to him to have moved from their original location. (Id.). However, Mr. Browder did notice new trees that had fallen during his absence. (Id.). He believed this was due to the wind blowing them over. (Id.). The Court acknowledges Mr. Browder did not make the statement about the fallen trees as an expert and accordingly does not give great weight to his statement about the cause of the toppling trees.

### b. The Homeowner's Insurance Policy

Defendant insured Plaintiffs' house under homeowner's policy 33-J0-8616-6 ("Policy").

3

(Doc. No. 36-2 at 10). The Policy covers direct physical loss to the house, as long as the damage is not excluded or limited by the Policy's terms. (Id. at 28). The Policy does not cover damage caused by "settling, shrinking, bulging or expansion, including resultant cracking, of footings, foundations, walls, floors, roofs or ceilings." (Id. at 30). Additionally, the Policy does not cover damage caused by "earth movement including landslide, earth sinking, rising or shifting; surface and subsurface water; and weather conditions where the conditions contribute in any way with an excluded cause of loss." (Id. at 32-34). As a result, if the cause of the damage is determined to be erosion, then Plaintiffs cannot recover insurance payouts from Defendant. (Doc. No. 36-2).

### c. Plaintiffs' Insurance Claim

Plaintiffs made a claim for damage to the Lake Lure house with Defendant on June 22, 2018. (Doc. No. 36-2 at 1). Claims Specialist Eli Ringel ("Mr. Ringel") spoke with Mr. Browder three days later, and Mr. Browder told him that Plaintiffs would not pursue the claim at this time. (Id. at 2). Instead, they planned to have an engineer inspect the house and would reevaluate the situation. (Id.). On July 10, 2018, Mr. Browder called Defendant and asked Defendant to reopen the claim Plaintiffs made in June and inspect the loss. (Id.).

Claims Specialist Doug Harvey ("Mr. Harvey") came to Plaintiffs' house to inspect it. (Id.). He inspected the house by examining visually observable damage and determined the loss was likely caused by foundation settlement and would not be covered under the policy. (Id.). Mr. Harvey declined to look underneath the house during his inspection due to safety concerns. (Id.; Doc. No. 36-10 at 59). He informed Mr. Browder that Defendant would have an engineer inspect the property to determine the cause. (Doc. No. 36-2 at 2). Defendant hired Professional Engineer Dana Shave ("Mr. Shave") to inspect the house and scheduled the inspection for August 3, 2018. (Id. at 3).

In the meantime, Mr. Browder contacted Professional Engineer Allan Abbata ("Mr. Abbata") to inspect the house. Mr. Abbata inspected the house on July 20, 2018. (Doc. No. 36-15 at 3). He inspected the house by taking photographs, taking moisture readings of the foundation, measuring the cracks in the foundation and walls, and making visual observations of the house. (Id. at 4). Mr. Abbata opined that the damage was from a one-time wind event that lifted the exterior decks of the house and pushed the house up the hill. (Id. at 8). He did not think there was evidence of erosion or flooding because he took moisture readings in the crawlspace under the house, which came back between seven and fifteen percent. He alleged these are "normal" levels for a crawlspace. (Doc. No. 36-15 at 9). Mr. Abbata did not research the weather conditions of Tropical Storm Alberto, did not conduct soil exploration to see if the foundation was compromised, and did not calculate the strength of wind needed to cause the damage to the house. (Doc. No. 47-8 at 15, 57, 105-106). He said that he did not need the soil information because he "knew in [his] mind what caused the problem." (Id. at 59). Mr. Abbata's opinion that a strong wind damaged the house came from a news article that mentions a tropical storm, severe weather alerts sent to a smartphone, an engineering report prepared by Engineer Jonathan Burrell ("Mr. Burrell"), and Mr. Abbata's interview of Plaintiffs. (Id. at 15). He interviewed Plaintiffs about the "events leading up to the date of loss and other information" related to "assessing the cause and extent of damage" to the house. (Doc. No. 36-15 at 4-5). Yet, Plaintiffs were not at the house when the storm occurred. (Doc. No. 47-8 at 58). Mr. Abbata also stated that he believed the winds were forceful because he saw downed trees in the area. (Doc. No. 36-11 at 30-31).

Mr. Browder had Mr. Burrell inspect the house on July 23, 2018. (Doc. No. 36-16 at 11). He provided a two-page report that addressed his visual site observations. (Id.). He did not conclude what caused the damage to the house but noted: "observations of the ground cover

5

surrounding the residential structure indicated no signs of erosion or water flowing towards the residential structure." (Id.).

Mr. Shave inspected the house on August 3, 2018. (Doc. No. 36-2 at 3). During his inspection, he observed the interior, exterior, and crawl space. (Id.). He made visual observations and took photographs. (Id.). Mr. Shave concluded that the damages to the house were caused by soils sliding down the steep hill that Plaintiffs' house stood on. (Id.). He also stated that there was likely erosion of the soil under the foundation of the rear of the house, which the rains from Tropical Storm Alberto probably contributed to. (Id.). After Mr. Shave finalized his report, Claims Specialist Dan Stone ("Mr. Stone") advised Plaintiffs that he would be sending a denial letter to them, with the specific Policy provisions applicable to the loss enclosed. (Id.). Plaintiffs received the denial on August 14. (Id.). On August 17, 2018, Defendant received reports from Plaintiffs' engineers and noted that their conclusions conflicted with Defendant's engineers. (Id. at 4). At this point, Defendant decided it wanted to continue to investigate the claim and hired Professional Engineer Doug Dunko ("Mr. Dunko"). (Id.).

Mr. Dunko inspected the house on September 11. He made visual observations, took measurements, and took photographs of the house, trees, and ground surrounding the house. (Doc. No. 36-8 at 2). He also reviewed the reports of Mr. Burrell and Mr. Abbata and the North Carolina Geological Survey from May 2019. (Id.). After his inspection, he concluded that general settlement or bearing capacity issues of the soil underneath the house caused the damages. He did not perform soil testing to form his opinion because the physical evidence "was clearly provided." (Id. at 4).

After considering all the evidence and expert reports, Defendant determined the damage was not covered by the Policy. They notified Plaintiffs of the denial through Plaintiffs' counsel

6

Case 1:20-cv-00026-MOC-WCM   Document 65   Filed 07/22/21   Page 6 of 13

in October 2018. (Doc. No. 36-2 at 5).

### III. LEGAL STANDARD

Federal diversity jurisdiction requires that the court apply state substantive law and federal procedural law. Hanna v. Plumer, 380 U.S. 460, 465–66 (1965); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72–73, 79–80 (1938). Therefore, this Court will evaluate the Motion for Summary Judgment under the Federal Rules of Civil Procedure. The breach of contract claim, refusal to settle in bad faith claim, and unfair or deceptive trade practices claim will be evaluated under North Carolina state law.

#### a. Summary Judgment

Summary judgment is appropriate if the movant shows there is not a genuine dispute of material fact. Lack of a dispute entitles the movant to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is "material" when it could impact the case's outcome. News Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). Summary judgment may dispose of factually unsupported claims: the moving party is successful when they show an absence of evidence for the nonmoving party to argue their case. Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc., 33 F.3d 390, 393-394 (4th Cir. 1994).

A genuine dispute of material fact exists when there is evidence "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). The Court views the pleadings and materials in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Adams v. Trustees of the Univ. of N.C. Wilmington, 640 F.3d 550, 556 (4th Cir. 2011). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

7

Anderson, 477 U.S. at 248. When the record could not result in a rational factfinder finding for the nonmoving party, there is "no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

### a. Breach of Contract

Successful breach of contract claims must establish (1) the existence of a valid contract and (2) the breach of the terms of that contract. Chew v. Progressive Universal Ins. Co., No. 5:09-CV-351-FL, 2010 WL 4338352, at *7 (E.D.N.C. Oct. 25 2010); Wells Fargo Ins. Servs. USA, Inc. v. Link, 827 S.E.2d 458, 472 (N.C. 2019). The insured party is responsible for bringing the claim "within the insuring language of the policy." Hobson Constr. Co. v. Great Am. Ins. Co., 322 S.E.2d 632, 635 (N.C. Ct. App. 1984). If the insured party demonstrates that the policy's language includes the claim, then the burden shifts to the insurance company to show that the policy is excluded from coverage. Id. Documents are construed most strongly against the drafter. Lovin v. Crisp, 243 S.E.2d 406, 409 (N.C. Ct. App. 1978). When contracts are clear, their construction is a matter of law for the court, and the courts look at the instrument in its entirety. Id.

An insurance policy is a contract, and its provisions bind the parties involved. C.D. Spangler Constr. Co. v. Industrial Crankshaft & Engineering Co., 326 N.C. 133, 142 (N.C. 1990). When it is reasonable to do so, policy provisions that extend coverage are "construed liberally in favor of coverage." Id. (citing State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 538 (N.C. 1986).

When it comes down to it, there is only one dispute in this case–and that dispute is about a material fact. Plaintiffs believe that winds damaged their house, and Defendant believes

erosion from heavy rainfall damaged the house. Each side has employed multiple experts to discern the cause of damage, and these experts have also come to different conclusions.

The Court has reviewed several attempts by Defendant to reduce the effectiveness of Plaintiffs' factual arguments. None have been persuasive enough to entirely discard the expert testimony of Mr. Allan Abbata or the deposition and affidavit of Mr. David Browder. Therefore, Defendant has not been able to show that there was not a breach of the terms of the contract because there is still speculation over the cause of damage to Plaintiffs' home. Since the Court cannot grant a motion for summary judgment when there is a dispute over a material fact, especially one so important to the case at hand, the Court denies Defendant's motion for summary judgment on the breach of contract claim.

### b. Refusal to Settle in Bad Faith

North Carolina law finds that successful refusal to settle in bad faith claims prove three elements; "(1) refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct." Lovell v. Nationwide Mut. Ins. Co., 424 S.E.2d 181, 185-86 (N.C. Ct. App. 1993), aff'd, 435 S.E.2d 71 (N.C. 1993). Bad faith is not a legitimate, honest disagreement as to the validity of the claim. Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 631 (W.D.N.C. 2006). Aggravated conduct includes "fraud, malice, gross negligence, insult. . . willfully, or under circumstances of rudeness or oppression, or in a manner that evinces a reckless and wanton disregard of the plaintiff's rights." Id. There does not need to be proof of a separately identifiable tort to prove a bad faith claim. The tort only needs to be identifiable, and punitive damages could potentially be recoverable even though the tort may also be a breach of contract. Dailey v. Integon Gen. Ins. Corp., 331 S.E.2d 148, 150-51 (N.C. App. 1985).

Coming to a decision ultimately determined to be incorrect does not constitute a lack of

good faith in attempting to settle a claim when the insurer has a reasonable basis for challenging the claim's validity. Cent. Carolina Bank & Tr. Co., 247 F. Supp. 2d 791, 801; Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 647 (M.D.N.C. 2002); Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 234-35 (4th Cir. 2001).

The Court finds that Plaintiffs do not have enough evidence to succeed on a refusal to settle in bad faith claim. First, Defendant did not recognize a valid claim on the part of Plaintiffs. After executing a substantial investigation, Defendant concluded that Plaintiffs' damage to their home was not covered under the insurance policy. To be sure, there is disagreement between the parties over whether the claim is valid. But Defendant never recognized it as such.

Second, the Court finds Plaintiffs cannot prove bad faith on the part of Defendant. Coming to an incorrect decision does not mean there was a lack of good faith if the insurer had a reasonable basis for challenging the validity of the claim. An honest disagreement is not bad faith. Defendant investigated the claim thoroughly with the help of third-party assessments, and these third-party professionals believed the damage to Plaintiffs' home was because of erosion, not wind. Since Defendant's experts concluded the damage was caused by erosion, which is not supported by Plaintiffs' homeowner's insurance policy, there is a reasonable basis for Defendant finding the claim invalid.

Third, Plaintiffs have not shown there was any outrageous conduct on part of Defendant. Outrageous conduct shows blatant disregard for Plaintiffs' rights, gross negligence, and malice. Defendant's conduct does not qualify simply because the insurance company came to a decision that Plaintiffs do not agree with. The Court in part denied Defendant's Motion for Judgment on the Pleadings because discovery had not begun and it seemed that Plaintiffs had some evidence that this claim might succeed. Now that more evidence has emerged, the Court finds that

Defendant conducted itself professionally and appropriately throughout the duration of the investigation. Accordingly, the Court will dismiss the refusal to settle in bad faith claim.

### c. Unfair or Deceptive Trade Practices

Unfair or deceptive trade practices ("UDTP") are a question of law for the court. Blis Day Spa, LLC, 427 F. Supp. 2d at 634. See also Ellis v. N. Star Co., 388 S.E.2d 127, 131 (N.C. 1990). Successful UDTP claims establish an (1) unfair or deceptive act or practice that (2) affects commerce and (3) proximately caused injury to plaintiffs. Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000). UDTPs violate North Carolina's Insurance Unfair Claim Settlement Practices Act ("IUCSPA"). N.C. GEN. STAT. §58-63-15. When an insurance company violates the IUCSPA, it is a violation of N.C. GEN. STAT. § 75-1.1 as a matter of law. Id. at 683. But a breach of contract, even if intentional, "is not sufficiently unfair or deceptive" to warrant action under N.C. GEN. STAT. § 75-1.1. Branch Banking & Tr. Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992).

The IUCSPA finds the following "unfair and deceptive acts or practices" in the insurance industry: failing to acknowledge and act reasonably promptly upon communications concerning claims; refusing to pay claims without conducting a reasonable investigation; failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements are completed; not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured; attempting to settle a claim for less than a reasonable amount; or failing to promptly provide a reasonable explanation of the basis in the insurance policy regarding the facts or applicable law for denial of a claim or the offer of a

compromise settlement. N.C. GEN. STAT. § 58-63-15.

The IUCSPA gives a cause of action only to the Commissioner of Insurance. N.C. GEN. STAT. § 58-63-15(11). However, some courts believe that if the jury finds that the defendant is violating the provisions of the IUCSPA, it could support a finding of "unfair or deceptive acts or practices" under § 75-1.1. U.S. Fire Ins. Co. v. Nationwide Mut. Ins. Co., 735 F. Supp. 1320, 1328 (E.D.N.C. 1990); see also Gray, 529 S.E.2d at 682-683 ("We agree with the practice of looking to N.C.G.S. § 58-63-15(11) for examples of conduct to support a finding of unfair or deceptive acts or practices. Although N.C.G.S. § 58-63-15(11) does regulate settlement claims in the insurance industry, insurance companies are not immune to the general principles and provisions of N.C.G.S. § 75–1.1.").

Plaintiffs do not have sufficient evidence to bring a successful UDTP claim because they cannot identify an unfair or deceptive act or practice that Defendant engaged in. Defendant conducted a reasonable investigation, promptly responded to Plaintiffs' communications, and explained the reasons as to why they denied Plaintiffs' claim for relief. Other indicators of a UDTP, like attempting to settle for less than a reasonable amount, forcing the homeowner to commence litigation to recover, or refusing to settle after liability has become clear, are contingent upon whether Defendant believed Plaintiffs' claim was legitimate. As discussed earlier, Defendant believed that Plaintiffs' home loss was due to something that falls outside of the homeowner's insurance policy. That belief is reasonable because it is based on the assessments of Defendant's experts. Therefore, Defendant did not deny Plaintiffs' claim with any malice or deception. As a result, the Court will dismiss the UDTP claim.

V. **CONCLUSION**

The Court **DISMISSES** with **PREJUDICE** Plaintiffs' UDTP claim and refusal to settle

in bad faith claim. However, Plaintiffs' breach of contract claim survives Defendant's motion.

## ORDER

After careful consideration of the Motion for Summary Judgment, memoranda in favor and against Summary Judgment, and the facts of the case, this Court **GRANTS in part** and **DENIES in part** Defendant State Farm's Motion for Summary Judgment. (Doc. No. 39). **IT IS SO ORDERED.**

Signed: July 22, 2021

Max O. Cogburn Jr
United States District Judge